1
2
3
4
5          UNITED STATES DISTRICT COURT
6          EASTERN DISTRICT OF CALIFORNIA
7
8   YESENIA JIMENEZ,                    CASE NO. CV F 13-1200 LJO SMS
9              Plaintiff,               **ORDER ON CORRECT CARE SOLUTION'S**
10                                      **F.R.Civ.P. 12 MOTION TO DISMISS**
                                        (Doc. 18.)
11
12      vs.
13
14  CITY OF CERES, et al.,
15              Defendants.
16  _____/
17          **PRELIMINARY STATEMENT TO PARTIES AND COUNSEL**
18          Judges in the Eastern District of California carry the heaviest caseload in the nation,
19  and this Court is unable to devote inordinate time and resources to individual cases and
20  matters.  This Court cannot address all arguments, evidence and matters raised by parties and
21  addresses only the arguments, evidence and matters necessary to reach the decision in this
22  order given the shortage of district judges and staff.  The parties and counsel are encouraged to
23  contact United States Senators Dianne Feinstein and Barbara Boxer to address this Court's
24  inability to accommodate the parties and this action.  The parties are required to consider, and
25  if necessary, to reconsider consent to one of the Court's U.S. Magistrate Judges to conduct all
26  further proceedings in that the Magistrate Judges' availability is far more realistic and
27  accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill who must
28  prioritize criminal and older civil cases.  A Magistrate Judge consent form is available on this

1

Court's website.

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters.  Civil trials are no longer reset to a later date if Judge O'Neill is unavailable on the original date set for trial.  If a trial trails, it may proceed with little advance notice, and the parties and counsel may be expected to proceed to trial with less than 24 hours notice.  Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as visiting judges.  In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from outside the Eastern District of California.  Case management difficulties, including trial setting and interruption, are avoided if the parties consent to conduct of further proceedings by a U.S. Magistrate Judge.

## INTRODUCTION

Defendant Correct Care Solutions, LLC ("CCS") seeks to dismiss plaintiff Yesenia Jimenez' ("Ms. Jimenez'") inadequate medical care claims as insufficiently pled.  Ms. Jimenez responds that her operative First Amended Complaint for Damages, Declaratory & Injunctive Relief ("FAC") no less than raises inferences that a CCS nurse failed to summon and/or administer proper medical care for Ms. Jimenez.  This Court considered CCS' F.R.Civ.P. 12(b)(6) motion to dismiss on the record without a hearing, pursuant to Local Rule 230(g).  For the reasons discussed below, this Court DISMISSES the FAC's inadequate medical care claims against CCS.

## BACKGROUND[1]

## Ms. Jimenez' Arrest And Injury

Near midnight on August 10, 2012, police officers of defendant City of Ceres ("City") responded to a call regarding a party.  Ms. Jimenez was outside and uttered disapproval of the police officers.  Defendant City police officer Frederico Ortiz, Jr. ("Officer Ortiz") overheard Ms. Jimenez and in retaliation grabbed, pulled and bent Ms. Jimenez' wrist, slammed her onto his police car, and placed her in handcuffs.  Ms. Jimenez objected to Officer Ortiz' exertion of

---

[1]   The factual recitation summarizes the FAC.

2

force on her.  Ms. Jimenez suffered a grossly angulated and displaced fracture of the distal humeral shaft in her right arm.

Officer Ortiz placed Ms. Jimenez with her injured arm into the rear seat of his police vehicle.  Ms. Jimenez informed Officer Ortiz and other officers present that Officer Ortiz had severely injured or broken her arm.

### Absence Of Care During Detention

Officer Ortiz booked Ms. Jimenez into the Stanislaus County Jail/Public Safety Center ("center"), where Ms. Jimenez continued to complain about her right arm pain and discomfort. The nurse on duty at the center failed to summon and/or administer proper medical care or to take action to obtain immediate medical care.  Ms. Jimenez made several requests for medical assistance, but personnel of CCS and defendant Stanislaus County ("County") failed to take reasonable action to summon such medical care although CCS and/or County personnel knew or had reason to know that Ms. Jimenez required immediate medical care.

Upon her release from the center, Ms. Jimenez sought prompt medical care, and x-rays revealed a comminuted fracture of the distal humeral shaft.  Ms. Jimenez underwent "an invasive, complicated, and risky surgical procedure" on August 14, 2012.

The County district attorney declined to file criminal charges against Ms. Jimenez.

### Ms. Jimenez' Claims

The FAC alleges:

1.      A (twelfth) 42 U.S.C. § 1983 ("section 1983") claim that County guards/deputies and/or CCS nurse and/or employees "acted with deliberate indifference to Plaintiff's serious medical needs, in violation of the Eighth and Fourteenth Amendments"; and

2.      A (thirteenth) a California Government Code section 845.6 ("section 845.6") claim that CCS and its employees breached their duty "to take reasonable action to summon and/or furnish medical care" although "they knew of had reason to know that Plaintiff was in need of immediate medical care."

/ / /

/ / /

3

1

2

## DISCUSSION

3

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

4        CCS seeks to dismiss the section 1983 and section 845.6 claims in the absence of

5    sufficient supporting facts.

6        A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable

7    legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."

8    *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of*

9    *Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  A F.R.Civ.P. 12(b)(6) motion "tests the legal

10   sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

11       In addressing dismissal, a court must:  (1) construe the complaint in the light most

12   favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3)

13   determine whether plaintiff can prove any set of facts to support a claim that would merit

14   relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a

15   court is not required "to accept as true allegations that are merely conclusory, unwarranted

16   deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536

17   F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not assume the truth of legal

18   conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d

19   638, 643, n. 2 (9th Cir.1986), and must  not "assume that the [plaintiff] can prove facts that it

20   has not alleged or that the defendants have violated . . . laws in ways that have not been

21   alleged." *Associated General Contractors of California, Inc. v. California State Council of*

22   *Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to

23   amend if "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings*

24   *Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

25       A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which]

26   requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

27   of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65

28

4

(2007) (internal citations omitted).  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

With these standards in mind, this Court turns to CCS' challenges to the FAC's claims against it.

### Section 1983 Requirements

"Section 1983 imposes two essential proof requirements upon a claimant:  (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

 "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)).  Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996 (1976)).  "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker,* 443 U.S. at 140, 99 S.Ct. 2689 (1979).  Stated differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 813 (1994).  "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker*, 443 U.S. at 146, 99 S.Ct. 2689.

"Under Rule 8(a), a complaint must do more than name laws that may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws." *Anderson v. U.S. Dept. of Housing and Urban Development*, 554 F.3d 525, 528 (5th Cir.

6

2008).

### *Direct Participation*

"Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230, 117 S.Ct. 1822 (1997); *see Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.") "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused the constitutional deprivation." *Leer*, 844 F.2d at 633. Section 1983 requires that there be an actual connection or link between the defendant's actions and the deprivation allegedly suffered. *See Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978); *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598 (1976).

A plaintiff cannot hold an officer liable "because of his membership in a group without a showing of individual participation in the unlawful conduct." *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (citing *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996)). A plaintiff must "establish the 'integral participation' of the officers in the alleged constitutional violation." *Jones*, 297 F.3d at 935. "'[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation." *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004). Integral participation requires "some fundamental involvement in the conduct that allegedly caused the violation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481, n. 12 (9th Cir. 2007). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

"A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d

1193, 1194 (9th Cir. 1998).  A section 1983 plaintiff "must state the allegations generally so as to provide notice to the defendants and alert the court as to what conduct violated clearly established law."  *Preschooler II v. Clark County School Bd. of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007).

## Deliberate Indifference To Ms. Jimenez' Medical Needs

CCS challenges the absence of FAC facts for a section 1983 claim for deliberate indifference to Ms. Jimenez' medical needs.

A pretrial detainee's claim of failure to provide care for serious medical needs is analyzed under the substantive due process clause of the Fourteenth Amendment.  *Simmons v. Navajo County, Az.*, 609 F.3d 1011, 1017 (9th Cir. 2010); *Lolli v. County of Orange*, 351 F.3d 410, 418-419 (9th Cir. 2003); *see Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), *cert. denied*, 537 U.S. 1106, 123 S.Ct. 872 (2003).  "With regard to medical needs, the due process clause imposes, at a minimum, the same duty the Eighth Amendment imposes: 'persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs.'"  *Gibson*, 290 F.3d at 1187 (quoting *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996)).  "Under the Eighth Amendment's standard of deliberate indifference, a person is liable for denying a prisoner needed medical care only if the person 'knows of and disregards an excessive risk to inmate health and safety.'"  *Gibson*, 290 F.3d at 1187 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994)).

The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).  Plaintiffs must demonstrate that they were confined under conditions posing a risk of "objectively, sufficiently serious" harm and that the officials had a "sufficiently culpable state of mind" in denying the proper medical care.  *Wallis v.*

*Baldwin*, 70 F.3d 1074, 1076 (9th Cir.1995) (internal quotations omitted).

Deliberate indifference is shown by "a purposeful act or failure to respond to a [detainee's] pain or possible medical need, and harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citing *McGuckin*, 974 F.2d at 1060). Deliberate indifference may be manifested when officials "deny, delay or intentionally interfere with medical treatment." *Jett*, 439 F.3d at 1096 (citing *McGuckin*, 974 F.2d at 1060 (internal quotations omitted)).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Indifference to "medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980). Under the deliberate indifference standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970. "But if a person is aware of a substantial risk of serious harm, a person may be liable for neglecting a [detainee's] serious medical needs on the basis of either his action or his inaction." *Gibson*, 290 F.3d at 1188 (alteration in original). "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin*, 974 F.2d at 1060.

The "question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice . . ." *Estelle v. Gamble*, 429 U.S. 97, 107, 97 S.Ct. 285 (1976). "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. State of Or., State Welfare Division,* 662 F.2d 1337, 1344 (9th Cir. 1981); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) ("A difference of opinion does not amount to a deliberate indifference to Sanchez' serious medical needs"); *see Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir.1985) ("mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

This Court will address below the FAC's pleading of section 1983 deliberate indifference claims in conjunction with its pleading of section 845.6 claims.

### Section 845.6 – Failure To Summon Medical Care

Section 845.6 provides that although a public employee is not liable for injury caused by failure to furnish or obtain medical care for an inmate, a public employee, and his/her employer, are liable if he/she "knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." To state a section 845.6 claim, an inmate must establish: (1) the public employee knew or had reason to know of the need, (2) for immediate medical care, and (3) failed to reasonably summon such care. *Jett v. Penner*, 439 F.3d 1091, 1099 (9th Cir. 2006). "Liability under section 845.6 is limited to serious and obvious medical conditions requiring immediate care." *Watson v. State*, 21 Cal.App.4th 836, 26 Cal.Rptr.2d 262, 265 (1993). Section 845.6 "does not impose a duty to monitor the quality of care provided." *Jett*, 439 F.3d at 1099. The section 845.6 duty to provide medical care to inmates is limited to when there is actual or constructive knowledge that the inmate needs immediate medical care. *Lucas v. City of Los Angeles*, 47 Cal.App.4th 277, 288, 54 Cal.Rptr.2d 655 (1996). "The public employee must know or have reason to know of the need of immediate medical care and fail to summon such care." *Lucas*, 47 Cal.App.4th 277, 288, 54 Cal.Rptr.2d 655.

CCS faults the absence of facts to support a section 1983 deliberate indifference and section 845.6 failure to summon claims. CCS points to the FAC's "conclusory and speculative" allegations which demonstrate no contact with a CCS employee, or that CCS knew, had reason to know, or had been informed of an immediate medical need or Ms. Jimenez' pain and discomfort. CCS faults the absence of facts that CCS acted purposefully to disregard Ms. Jimenez' injury and aggravation of it due to delay.

Ms. Jimenez responds that "contact with a CCS employee is reasonably inferable" in that Ms. Jimenez was booked into the center where Ms. Jimenez complained of pain and discomfort and where CCS employees were working when Ms. Jimenez was booked. Ms. Jimenez relies on FAC allegations to suggest that a CCS nurse "acted with deliberate

indifference to Plaintiff's serious medical needs" and that the "nurse on duty . . . failed to summon and/or administer proper medical care to Plaintiff or to take other action to cause or enable Plaintiff to obtain immediate medical care."  Ms. Jimenez points to further FAC allegations that despite her requests for medical assistance, "CCS personnel failed to take reasonable action to summon such medical care," although County and/or CCS "personnel knew or had reason to know Plaintiff was in need of immediate medical care."

Perhaps realizing the absence of sufficient factual matter, Ms. Jimenez makes "an offer of proof" for further amendment that:

1.  CCA contracted with the County to provide medical treatment at the center during Ms. Jimenez' detention;

2.  Ms. Jimenez was seen by a CCS nurse; and

3.  Ms. Jimenez communicated her severe pain and injuries to a CCS employee(s) and made several requests for medical care to CCS personnel but was refused.

CCS raises valid points given the FAC's limited allegations as to CCS.  The FAC merely alleges that:

1.  Ms. Jimenez was booked into the center where she "continued to complain about pain and discomfort";

2.  An unidentified nurse on duty failed to summon or obtain proper medical care; and

3.  Despite Ms. Jimenez' requests for medical assistance, unidentified County and CCS personnel failed to take reasonable action.

The FAC lumps County and CCS personnel without identifying even generally the personnel and without distinguishing alleged misconduct or omissions of particular personnel. There are no facts to particularize what CCS through its unidentified employees knew about Ms. Jimenez' condition.  The FAC fails to identify specifically or generally Ms. Jimenez' complaints.  There are no allegations as to the contents or duration of her complaints and to whom they were directed.  The FAC alleges no more than that Ms. Jimenez arrived at the center with a fracture, was not treated despite complaints, and was released with a fracture for

which she had surgery several days later.  The FAC lacks sufficient factual matter to support the section 1983 deliberate indifference and section 845.6 failure to summon claims against CCS.

<u>**CONCLUSION AND ORDER**</u>

For the reasons discussed above, this Court:

1.      ORDERS Ms. Jimenez, no later than January 23, 2014, to file and serve either: (a) papers to dismiss this action against CCS; or (b) a second amended complaint which amends **only** the (twelfth) section 1983 deliberate indifference and (thirteenth) section 845.6 failure to summon claims against CCS **only**.  Ms. Jimenez is prohibited to amend claims against defendants other than CCS.  If Ms. Jimenez elects to amend the (twelfth) section 1983 deliberate indifference and (thirteenth) section 845.6 failure to summon claims against CCS, she is admonished to pursue only such claims based on sufficient supporting facts and law and that this Court will grant Ms. Jimenez no further attempt to plead claims; and

2.      ORDERS CCS and other defendants, no later than February 13, 2014, to file and serve a response to the second amended complaint, as necessary.

IT IS SO ORDERED.

Dated:   **January 3, 2014**                        **/s/ Lawrence J. O'Neill**
                                                        UNITED STATES DISTRICT JUDGE

12